IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | |
|---|---|
| LLOYD SCOTT MAIER, | Cause No. CV 08-26-H-DWM-RKS |
| Plaintiff, | |
| | ORDER TO SERVE COMPLAINT BY REQUESTING WAIVER OF SERVICE OF  SUMMONS  AND  FINDINGS  AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| MARTY MAURINAC, et. al. | |
| Defendants | |
| | **(Defendants please see D.Mont. L.R. 12.2**) |

_____

This matter comes before the Court on Plaintiff's Complaint filed April 8, 2008

(Document 2) and his Motion to Add to Main Documents.  (Document 10).

## I.  STATEMENT OF THE CASE

### A.      Jurisdiction

Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983, the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), the Religious Freedom Restoration Act

("RFRA") and the Americans with Disabilities Act ("ADA") seeking to recover for alleged

violations while incarcerated at the Montana State Prison.  Accordingly, the Court has federal

question jurisdiction pursuant to 28 U.S.C. § 1331.

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE - CV-08-26-H-DWM-RKS / PAGE 1

### B.    Parties

Plaintiff is a state prisoner incarcerated at the Montana State Prison in Deer Lodge, Montana.

The named Defendants are:  Correctional Officer Marty Maurinac, Deputy Warden Ross Swanson, Lt. Biggs, Security Major Tom Woods, Grievance Coordinator Michell L. Steyh, Sgt. Young, Case Manager Browning, Director Mike Ferriter, Warden Jim MacDonald and Chaplain John Meckling.

### C.    Plaintiff's Allegations

Plaintiff has alleged four grounds for relief in his Complaint.  First, he contends that he was denied his right to practice his religion while incarcerated in Administrative Segregation at Crossroads Correctional Center in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").   He claims that Defendants Meckling and MacDonald's actions placed a "substantial burden" on his "religious exercise." (Document 2-2, p. 1).

Specifically, Plaintiff states that he practices Wicca[1] or Witchcraft.  He contends that on April 19, 2007, he sent a kite to Chaplain Meckling asking for his tarot cards and book.[2] (Document 2-3, p. 14--April 19, 2007 Inmate Letter to Chaplain Meckling).  On April 24, 2007, Chaplain Meckling responded by bringing the kite back to Plaintiff stating:  "Wicca has a

---

[1]"Wicca is a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity.  Its practices include the use of herbal magic and benign witchcraft." *O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 400 (7th Cir. 2003) (internal quotation omitted).

[2]It is the Court's understanding that a "kite" is a written inmate letter or request to a staff member.

number of books that can be considered the Wicca Bible.  Taro cards are for divination and not a

Bible." (Document 2-3, p. 14--April 19, 2007 Inmate Letter to Chaplain Meckling).  Plaintiff

alleges that Chaplain Meckling also told him that he was not allowed to practice Wicca in

Administrative Segregation.  When Plaintiff inquired why the Chaplain was passing out Bibles to

inmates, the Chaplain stated that only Bibles were allowed in Administrative Segregation.

Plaintiff contends that the actions of Chaplain Meckling and Warden Jim MacDonald

created a "substantial burden" on his religious exercise because he needed his tarot cards to

practice his religion.

Count 2 of Plaintiff's Complaint alleges that on October 24 or 25, 2007, Defendant

Browning was passing out food trays but did not pass ice cream to Plaintiff's neighbor.

Plaintiff's neighbor asked why and Defendant Browning went into a "mad tyrant" called Plaintiff

a name and shut his hatch and his neighbor's hatch.  Plaintiff alleges that Defendant Browning

then told other staff not to feed Plaintiff and his neighbor.  About an hour later a guard brought

the food trays to them but Plaintiff and his neighbor refused them for fear of what the guards had

done to the food.

Plaintiff filed a grievance against Defendant Browning and Browning's behavior got

more aggressive after the grievance.  Defendant Browning started to try to intimidate Plaintiff by

"mad doging and slaming my hatch and throwing my food on the floor."  Plaintiff alleges that as

a result he was injured by Browning's action and the non-action of Deputy Warden Swanson,

Security Major Woods and Defendant Ferriter.

Count 3 of the Complaint alleges that on February 16, 2008, Plaintiff filed an informal

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE - CV-08-26-H-DWM-RKS / PAGE 3

grievance after Officer Marty Maurinac shook down his cell and took his "Raymond Bucklands Complete Book of Witchcraft."  Plaintiff was given a contraband infraction report on March 12, 2008.  Sgt. Young conducted a hearing where Plaintiff was informed that Major Tom Woods had given Sgt. Young a direct order to find Plaintiff guilty.  Plaintiff argues that he did not receive a fair or impartial hearing.  Michell L. Steyh responded to Plaintiff's grievance by stating that there was nudity in the book.  Deputy Warden Swanson[3] stated on Plaintiff's appeal that they had reviewed the book and that type of book was not allowed in the prison  At the hearing Plaintiff agreed that the information in the book regarding how to make a ritual knife is not appropriate for a prison setting but since it was only one page he asked for the least restrictive means in determining his liberty interest.  Plaintiff contends that the rest of the book is religious and is not a threat.  Plaintiff contends that his First Amendment and Eighth Amendment rights are being violated.

Count 4 alleges that Plaintiff has a disability in that he is hearing impaired and has a mental disability.  Plaintiff states that when he asked Sgt. Young for a hearing aid battery, the response was, "What! What! What!"  Plaintiff states that he has trouble with 90% of the staff because he cannot hear them.  He mentions the Americans with Disabilities Act and states that he has a hard time getting health care because staff do not understand him and misdiagnose him due to the lack of communication.  He cites a lack of interpreters, improper methods for conducting administrative disciplinary hearings and misdiagnosis of medical conditions as examples of ADA violations.  He also seems to suggest that he was denied mental health treatment because he was

---

[3]In Count 3, Plaintiff refers to Deputy Warden Ross.  The Court has presumed that Plaintiff is referring to Deputy Warden Ross Swanson.

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE - CV-08-26-H-DWM-RKS / PAGE 4

not allowed to sit in group.

## II. PRESCREENING

### A. Standard

As Plaintiff is a prisoner proceeding in forma pauperis, his Complaint is subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A, which impose a screening responsibility on the district court.  Section 1915A reads in pertinent part as follows:

> The court shall review  . . .  as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and][o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b); *see also* 28 U.S.C. § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that  . . .  (B) the action or appeal-(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.").

Both sections 1915A(b) and 1915(e)(2)(B) provide that the Court may dismiss the complaint before it is served upon the defendants if it finds that the complaint is "frivolous" or that it "fails to state a claim upon which relief may be granted."  A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. \_\_\_\_, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)

(quotation omitted).  This requirement demands "more than labels and conclusions, [or] a

formulaic recitation of the elements of a cause of action." *Id.*  A complaint must "'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v.*

*Pardus*, 550 U.S. \_\_\_\_, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)(quoting *Bell*, 127 S.Ct.

at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

Additionally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson*, 127 S.Ct. at 2200; *Cf.* Fed. Rule Civ. Proc. 8(f) ("All

pleadings shall be so construed as to do substantial justice").

Although the statute requires a dismissal for the reasons stated, it does not deprive the

district court of its discretion to grant or deny leave to amend.  *Lopez v. Smith*, 203 F.3d 1122,

1127 (9th Cir. 2000).  The court can decline to grant leave to amend if "it determines that the

pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United*

*States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Leave to amend is liberally granted to pro se litigants

unless it is "absolutely clear that the deficiencies of the complaint could not be cured by

amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter*

*Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

### B. Religious Claims

Plaintiff makes allegations of interference with his free exercise of religion in violation of

the First Amendment to the United States Constitution, claims under RLUIPA and claims under

the RFRA in Counts 1 and 3 of his Complaint.

### 1. First Amendment Free Exercise Violation

The First Amendment to the United States Constitution states in pertinent part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...."  In order for a religious claim to merit protection under this clause, the claim must first meet two criteria:  (1) the proffered belief must be sincerely held; and (2) "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981).   That is, the Court must determine "whether the plaintiff's claim is related to his sincerely held religious belief."  *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008).   If the claim satisfies these criteria, the Court must then determine the extent to which the religious beliefs were burdened by the government, consider whether the government has a compelling interest in creating that burden, and decide whether that interest may be satisfied by some less restrictive means.  *Callahan*, 658 F.2d at 686-687.

Plaintiff identifies his religion as Wicca or Witchcraft.  Plaintiff first contends that Defendants Meckling and MacDonald violated his First Amendment rights when they refused to allow him to practice Wicca while incarcerated in administrative segregation and refused to allow him to have his tarot cards even though they passed out Bibles to other inmates.  In Count 3 Plaintiff alleges that Defendants Maurinac, Swanson and Steyh violated his First Amendment rights when they confiscated Plaintiff's book, "Raymond Bucklands Complete Book of Witchcraft" and informed him that he was not allowed to practice Witchcraft.  He contends that

he needs these materials to practice his faith.  Plaintiff's allegations are sufficient to state a claim

under the First Amendment.  *See Kay v. Bemis*, 500 F.3d 1214 (10th Cir. 2007); *O'Bryan v.*

*Bureau of Prisons*, 349 F.3d 399, 400 (7th Cir. 2003); *Dettmer v. Landon*, 799 F.2d 929, 933

(4th Cir. 1986) (holding that Wicca is a religion subject to First Amendment protection); *see also*

*Pugh v. Caruso*, 2006 WL 696497, 2006 U.S. Dist. LEXIS 24709 (W.D.Mich. March 15, 2006)

at *4 n. 2. (stating that Michigan state penal regulations recognize Wicca as a religion and

permits inmates one deck of tarot cards).

### 2.  Religious Land Use and Institutionalized Persons Act,  42 U.S.C. § 2000cc to 2000dd-1[4]

RLUIPA is a federal statute, not a constitutional provision.  A plaintiff may sue for

constitutional violations under 42 U.S.C. § 1983; RLUIPA provides a cause of action under a

different statute, 42 U.S.C. § 2000cc et seq.[5]  42 U.S.C. § 2000cc-1(a) provides that "[n]o

government shall impose a substantial burden on the religious exercise of a person residing in or

confined to an institution," unless the government shows that the burden furthers "a compelling

governmental interest" and does so by "the least restrictive means."  The Act defines "religious

exercise" to include "any exercise of religion, whether or not compelled by, or central to, a

system of religious belief."  *Id*. § 2000cc-5(7)(A); *Warsolider v.  Woodford*, 418 F.3d 989, 994

---

[4]Plaintiff seeks to bring his claims under RFRA or RLUIPA or both.  (Document 2-2, p. 1).
However, the Supreme Court struck down RFRA as applied to the states in *City of Boerne v. Flores*, 521 U.S.
507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).  Accordingly, Plaintiff's claims will only be analyzed under
RLUIPA.

[5] While a plaintiff may sue under 42 U.S.C. § 1983 for violation of any federal law, including a
violation of a federal statute like RLUIPA, there is no need to show liability under § 1983 if the plaintiff has
a cause of action directly under the federal statute.  Therefore, the Court will only consider the RLUIPA
claim on its own terms, not under 42 U.S.C. § 1983.

(9th Cir. 2005). Claims brought under RLUIPA are subject to a strict scrutiny standard, as opposed to the reasonableness standard employed in cases involving constitutional violations. See *Henderson v. Terhune*, 379 F.3d 709, 715 n. 1 (9th Cir. 2004).

RLUIPA broadly defines "religious exercise" as "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' " *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005) (quoting 42 U.S.C. § 2000cc-2(a)). RLUIPA is "to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier*, 418 F.3d at 995 (citing 42 U.S.C. § 2000cc-3(g)). The plaintiff bears the initial burden of demonstrating a prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs. *Warsoldier*, 418 F.3d at 994.

RLUIPA's standards are considerably lower than those that must be met to show a constitutional violation. As Plaintiff has stated a claim for a constitutional violation, he has also done so under RLUIPA. Plaintiff alleges that Defendants' refusal to allow him to practice his religion, their refusal to provide him with tarot cards and their confiscation of his book substantially burdened his practice of his religion. He further contends that even though his book may have contained a page that was not appropriate in a prison setting, their confiscation of the entire book was not the least restrictive means of protecting the prison's security interests.

The Court finds that Plaintiff's allegations of interference with his free exercise of religion in violation of the First Amendment and his claims under RLUIPA as stated in Counts 1 and 3 of his Complaint are sufficient to state a claim.

Plaintiff has presented allegations that Defendants Meckling, Maurinac, Swanson and

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE - CV-08-26-H-DWM-RKS / PAGE 9

Steyh personally participated in the alleged constitutional and statutory violations involving Plaintiff's religious materials.  However, he has not made the same allegations with regard to Warden MacDonald and Director Ferriter.  Plaintiff's allegations against these two Defendants appear to arise out of their review of Plaintiff's grievances and in their capacities as heads of the Crossroads Correctional Facility and the Department of Corrections responsible for the rules and regulations which Plaintiff challenges.

Plaintiff cannot state a constitutional claim with regard to the prison's grievance procedure.  Prisoners do not have a constitutionally recognized due process right regarding the proper handling of grievances.  *See Mann v. Adams*, 855 F.2d 6398, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").  Thus, Plaintiff's allegations against Warden MacDonald and Director Ferriter in their personal capacity fail to state a claim.

Section 1983 imposes liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights.  *Monell v. Department of Social Services*, 436 U.S. 658, 691-94 (1978).  Section 1983 will not impose liability on supervising officers under a respondeat superior theory of liability. *Id.*  That is, the defendants will not be held liable just because they oversee the prison or the Department of Corrections.  Instead, supervising officers can be held liable under section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).  In order to be liable, a supervising officer has to personally take some action against the Plaintiff or "set in motion a series of acts by others. . . , which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.

1991) (internal quotations omitted).

The Court construes Plaintiff's challenge to the validity of the prisons' rules and regulations regarding religious materials to state a claim under *Monell*, 436 U.S. 658 as stated against Warden MacDonald and Director Ferriter based upon their responsibility for the policies and practices implemented at Crossroads Correctional Center and the Montana State Prison. Accordingly, the Court will allow service upon Warden MacDonald and Director Ferriter in their official capacity.

### C.  Harassment/Name Calling

Plaintiff's second claim for relief alleges that Sgt. Browning called him a name, delayed delivery of his food tray, and tried to intimidate Plaintiff by "mad dogging", slamming Plaintiff's hatch and throwing Plaintiff's food on the floor.  These allegations are insufficient to state a claim for denial of a constitutional right.  Verbal harassment generally does not violate the Eighth Amendment.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)(directing vulgar language at an inmate does not state a constitutional claim).  While Plaintiff refused to eat his food tray in fear that his food had been tampered with, his speculation regarding that incident and his other allegations in this regard do not rise to the level of a constitutional violation.  Accordingly, Plaintiff's second claim for relief will be recommended for dismissal.

### D.  Due Process Claims

Count 3 of Plaintiff's Complaint also alleges due process violations as a result a disciplinary hearing which Plaintiff received for being in possession of contraband, i.e. his

Witchcraft book.  Prisoners do not shed all constitutional rights at the prison gate.  *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974 (1974).  Inmates such as plaintiff are entitled to be free from arbitrary actions by prison officials.  *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995).  However, protection from such arbitrary disciplinary actions generally comes in the form of procedural due process rights, e.g., prior written notice of a violation, the right to present witnesses and evidence, a written statement of fact-finding, and a decision by an impartial body.  *See Wolff v. McDonnell*, 418 U.S. 539.

Liberally construed, Plaintiff contends that the hearing was not conducted by an impartial body because the hearing officer was instructed by Major Wood to find Plaintiff guilty.  Regardless, Plaintiff has failed to state a due process claim.  In *Sandin,* the United States Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to *freedom from restraint* which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  *Sandin*, 115 S. Ct. at 2300 (emphasis added).  Thus, such liberty interests arising from the Due Process Clause are limited to "freedom from restraint."  Following *Sandin*, a prisoner can only assert a protected liberty interest when the prison's actions have the effect of altering the term of imprisonment (i.e. revocation of good time credits), or when a state prison regulation proscribes a prison official's conduct and the conduct imposes an "atypical and significant hardship" on the inmate. *See Sandin*, 115 S.Ct. at 2300.

As set forth in the exhibits attached to Plaintiff's Complaint, the sanction which Plaintiff

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE - CV-08-26-H-DWM-RKS / PAGE 12

received as a result of the disciplinary hearing at issue as that his book was confiscated and destroyed.  Such a sanction does not effect Plaintiff's term of imprisonment or create an "atypical and significant hardship" as Plaintiff's interest in his book does not effect or arise from Plaintiff's liberty interests in freedom from restraint.  The *Sandin* Court specifically recognized that prisoners  "retain other protection from arbitrary state action even within the expected conditions of confinement.  They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment ...." *Sandin*, 515 U.S. at 487 n. 11; *see also Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995)*; DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Kimberlin v. Quinlan*, 199 F.3d 496, 501 (D.C.Cir.1999).  Plaintiff's protection against the destruction of his religious book lies in the First Amendment, not in the due process clause.  Thus, Plaintiff's due process claims will be recommended for dismissal.

### E.  ADA Claims

Plaintiff's fourth claim for relief alleges that he has hearing and mental disabilities protected under the Americans with Disabilities Act of 1990 ("ADA").  The ADA was enacted with the purpose, in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "The statute addresses this goal in three main sections:  Title I prohibits public and private employers from discriminating against qualified individuals with disabilities in employment practices; Title II requires state and local governments to ensure that individuals with disabilities have access to public services, including transportation services; and Title III requires equal access to public accommodations." *Bass v. County of Butte*, 458 F.3d 978 (9th Cir. 2006).

Plaintiff's allegations fall under Title II of the ADA.  Pursuant to Title II of the ADA, a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Title II applies to prisoners in state facilities.  *See Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 209-10, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998); *Lee v. City of Los Angeles,* 250 F.3d 668, 691 (9th Cir. 2001).

In order to state a claim of disability discrimination under Title II of the ADA plaintiff must allege four elements: 1) he is an individual with a disability; 2) he is otherwise qualified to participate or receive the benefit of some public entity's services, programs, or activities; 3) he was either excluded from participation in or denied the benefits of the public entity's services . . . or was otherwise discriminated against by the public entity; and 4) such exclusion, denial  . . .  or discrimination was by reason of his disability."  *McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004); *see also, Townsend v. Quasim,* 328 F.3d 511, 516 (9th Cir. 2003); *Duffy v. Riveland,* 98 F.3d 447, 455 (9th Cir. 1996).

Plaintiff contends that he is not treated properly by staff because he cannot hear them, that he does not get the health care he needs because he is unable to communicate properly with staff, that the prison has a lack of interpreters and that the administrative disciplinary hearings are done in violation of the ADA.

> A disability discrimination claim may be brought either on the theory that defendant failed to make reasonable accommodations or on a more conventional disparate treatment theory, or both. This is because the ADA not only protects against disparate treatment, it also creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

*Dunlap v. Association of Bay Area Governments*, 996 F.Supp. 962, 965 (N.D.Cal. 1998).[6]

Although Title II of the ADA uses the term "reasonable modification," rather than "reasonable

accommodation," these terms create identical standards. *See Wong v. Regents of Univ. of Cal.*,

*192 F.3d 807, 816 n. 26 (9th Cir. 1999)*.

Speaking specifically to claims under Title II of the ADA, the Ninth Circuit has made

clear that "Congress intended to prohibit two different phenomena.  Congress intended to

prohibit outright discrimination, as well as those forms of discrimination which deny disabled

persons public services disproportionately due to their disability." *Crowder v. Kitagawa*, 81 F.3d

1480, 1483 (9th Cir. 1996).  Addressing a class action brought pursuant to Title II of the ADA,

the Ninth Circuit has stated:

> When a state's policies discriminate against the disabled in violation of the ADA,
> the ADA's regulations mandate reasonable modifications to those policies in order
> to avoid discrimination on the basis of disability, at least when such modification
> would not fundamentally alter the nature of the services provided by the state.

*Townsend*, 328 F.3d at 517 (citations omitted).

Plaintiff's allegations are sufficient to state a claim under Title II of the ADA.

Plaintiff has named Defendants Maurinac, Steyh, Young, Swanson and Woods with

regard to this claim.  However, a plaintiff cannot seek damages or injunctive relief pursuant to

the ADA against defendants in their individual capacities.  *See Eason v. Clark County School*

*Dist.*, 303 F.3d 1137, 1145 (9th Cir. 2002).  However, the Eleventh Amendment does not bar

ADA suits against state officials in their official capacities for injunctive relief or damages. *See*

---

[6] Although *Dunlap*, 996 F.Supp. 962, considers specifically Title III of the ADA,  *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004), cites *Dunlap* in the context of a Title II claim.

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE - CV-08-26-H-DWM-RKS / PAGE 15

*Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 791-92 (9th Cir.2004).   Accordingly, Defendants Maurinac, Steyh, Young, Swanson and Woods will only be served in their official capacities but will be required to file a response to Plaintiff's ADA claims.

### III.  MOTION TO ADD DOCUMENTS

The Court has construed Plaintiff's Motion to Add to Main Documents as a motion to supplement his complaint to demonstrate his exhaustion of administrative remedies.  As such, his motion will be granted.  However, Plaintiff is advised that the Court does not generally accept the filing of exhibits which are unrelated to a motion.

### IV. CONCLUSION

The Court will recommend that Plaintiff's harassment claims (Count 2) and due process claims (part of Count 3) be dismissed with prejudice for failure to state a claim.  As Defendant Browning is only named in Plaintiff's harassment claim he will also be recommended for dismissal.  Plaintiff has failed to raise any allegations against Defendant Biggs in his Complaint so Defendant Biggs will be recommended for dismissal.

The Court will require Defendants Meckling (in his individual capacity) and Defendant MacDonald (in his official capacity) to file a response to Count 1 of Plaintiff's Complaint.  The Court will require Defendants Maurinac (in his individual capacity), Swanson (in his individual capacity), Steyh (in her individual capacity) and Ferriter (in his official capacity) to file a response to Plaintiff's religious claims raised in Count 3 of the Complaint.  The Court will require Defendants Maurinac, Steyh, Young, Swanson and Woods (in their official capacity) to respond to Plaintiff's ADA claims raised in Count 4 of the Complaint.

The Court draws no conclusions about the truth of Plaintiff's allegations or about the strength of the evidence he might offer to corroborate them.  The Court only finds that Plaintiff's Complaint has said enough to require a response from Defendants.

Based on the foregoing, the Court enters the following:

## ORDER

1.  Pursuant to Fed. R. Civ. P. 4(d), the Court will request Defendants Meckling, MacDonald, Maurinac, Steyh, Ferriter, Young, Swanson and Woods to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons.[7] The Waiver must be returned to the Court within **thirty (30) days of the entry date reflected on the Notice of Electronic Filing**.  If Defendants choose to return the Waiver of Service of Summons, their answer or appropriate motion will be due within 60 days after the entry date reflected on the Notice of Electronic Filing, pursuant to Fed. R. Civ. P. 12(a)(1)(B). *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," Defendants are required to respond).

2.  The Clerk of Court shall forward the documents listed below to:

Legal Counsel for the
Montana Department of Corrections

---

[7]No response is necessary at this time from the defendants which are recommended for dismissal below.

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE - CV-08-26-H-DWM-RKS / PAGE 17

P.O. Box 201301
Helena, MT 59620-1301

for Defendants Maurniac, Steyh, Ferriter, Young, Swanson and Woods; and to:

David McLean
Browning, Kaleczyc, Berry & Hoven
100 West Railroad Street, Suite 200
Missoula, MT  59802

for Defendants Meckling and MacDonald.

     *     this Order and Findings and Recommendation;

     *     a Notice of Lawsuit & Request to Waive Service of Summons;

     *     a Waiver of Service of Summons;

     *     Plaintiff's Complaint (Document 2);

     *     Plaintiff's Motion for Discovery (Document 4);

     *     the Order of April 22, 2008 denying Motion for Discovery (Document 7); and

     *     Plaintiff's Motion to Add to Main Documents (Document 10).

Should counsel determine that they do not represent Defendants in this matter, they should notify the Court's pro se department as soon as possible.  Counsel for Defendants must file a "Notice of Appearance" as a separate document at the time an Answer or Rule 12 motion is filed. *See* D. Mont. L.R. 12.2.

3.  Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE - CV-08-26-H-DWM-RKS / PAGE 18

in the form of a notice.  The Court will not consider requests made or information presented in letter form.

4.  Pursuant to Fed. R. Civ. P. 5(a), all documents presented for the Court's consideration must be simultaneously served by first-class mail upon the opposing party or their counsel if the party is represented.  Each party shall sign and attach a proper certificate of service to each document filed with the Court.  The Certificate of Service must state the date on which the document was deposited in the mail and the name and address of the person to whom the document was sent.  The sender must sign the certificate of service.

5.  Plaintiff shall not make any motion for default until at least seventy (70) days after the date of this Order.

6.  Plaintiff's Motion to Add to Main Documents (Document 10) is **GRANTED.**

7.  At all times during the pendency of this action, Plaintiff SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except that if Plaintiff has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

Further the Court issues the following:

## RECOMMENDATION

1. Defendants Browning and Biggs should be **DISMISSED.**

2. Plaintiff's second claim regarding harassment should be **DISMISSED WITH PREJUDICE** for failure to state a claim.

3. Plaintiff's due process claims alleged in Count 3 of his Complaint should be **DISMISSED WITH PREJUDICE** for failure to state a claim.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date this Findings and Recommendation is entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 27th day of May, 2008.

/s/ Keith Strong_____
Keith Strong
United States Magistrate Judge

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE - CV-08-26-H-DWM-RKS / PAGE 20

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:    Legal Counsel for the
Montana Department of Corrections
P.O. Box 201301
Helena, MT 59620-1301

A lawsuit has been commenced by an incarcerated pro se plaintiff against Correctional Officer Marty Maurinac, Deputy Warden Ross Swanson, Security Major Tom Woods, Michell L. Steyh, Sgt. Young, and Director Ferriter, individuals who you may represent. A copy of the Complaint is attached to this notice. It has been filed in the United States District Court for the District of Montana, Civil Action No. CV-08-026-H-DWM-RKS. The Court has completed its pre-screening and concludes that Defendants Maurinac, Swanson, Woods, Steyh, Young, and Ferriter, must file a responsive pleading. *See* 42 U.S.C. § 1997e(c), (g)(2); 28 U.S.C. §§ 1915(e)(2), 1915A(a), (b).

This is not a formal summons or notification from the Court, but rather a request that you sign and return the enclosed waiver of service in order to save the cost of service by the U.S. Marshal's Service. The cost of service will be avoided if you return the signed Waiver of Service of Summons within 30 days after the entry date reflected on the Notice of Electronic Filing of the "Order to Serve Complaint by Requesting Waiver of Service of Summons," which was served with this Notice.

If you comply with this request and return the waiver to the Court, it will be filed with the Court and no summons will be served. The action will then proceed as if you had been served on the date the waiver is filed, except that you must file an answer or appropriate motion before 60 days from the date the Order directing this Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

If you do not wish to waive service on behalf of Defendants Maurinac, Swanson, Woods, Steyh, Young, and Ferriter, please indicate this on the Waiver of Service of Summons form. The Court will, in turn, order the U.S. Marshal's Service to serve the Complaint personally on Defendants Maurinac, Swanson, Woods, Steyh, Young, and Ferriter, and may impose the full costs of such service.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:    David McLean
         Browning, Kaleczyc, Berry & Hoven
         100 West Railroad Street, Suite 200
         Missoula, MT  59802

        A lawsuit has been commenced by an incarcerated pro se plaintiff against Chaplain Meckling and Warden Jim MacDonald, individuals who you may represent.  A copy of the Complaint is attached to this notice.  It has been filed in the United States District Court for the District of Montana, Civil Action No. CV-08-026-H-DWM-RKS.  The Court has completed its pre-screening and concludes that Defendants Meckling and MacDonald must file a responsive pleading.  *See* 42 U.S.C. § 1997e(c), (g)(2); 28 U.S.C. §§ 1915(e)(2), 1915A(a), (b).

        This is not a formal summons or notification from the Court, but rather a request that you sign and return the enclosed waiver of service in order to save the cost of service by the U.S. Marshal's Service.  The cost of service will be avoided if you return the signed Waiver of Service of Summons within 30 days after the entry date reflected on the Notice of Electronic Filing of the "Order to Serve Complaint by Requesting Waiver of Service of Summons," which was served with this Notice.

        If you comply with this request and return the waiver to the Court, it will be filed with the Court and no summons will be served.  The action will then proceed as if you had been served on the date the waiver is filed, except that you must file an answer or appropriate motion before 60 days from the date the Order directing this Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

        If you do not wish to waive service on behalf of Defendants Meckling and MacDonald, please indicate this on the Waiver of Service of Summons form.  The Court will, in turn, order the U.S. Marshal's Service to serve the Complaint personally on Defendants Meckling and MacDonald and may impose the full costs of such service.

                             /s/ Keith Strong
                             Keith Strong
                             United States Magistrate Judge

# WAIVER OF SERVICE OF SUMMONS

TO:    The U.S. District Court for the District of Montana

      The following Defendants acknowledge receipt of your request that they waive service of summons in the following action: Lloyd Maier v. Maurinac, et. al., Civil Action No. CV-08-026-H-DWM-RKS filed in the United States District Court for the District of Montana.  Defendants have also received a copy of the Complaint.  I am authorized by the following Defendants to agree to save the cost of service of a summons and an additional copy of the complaint in this action by not requiring that the following individuals be served with judicial process in the case provided by Fed. R. Civ. P. 4:

_____; _____;

_____; _____;

_____; _____;

      The above-named defendants retain all defenses or objections to the lawsuits or to the jurisdiction or venue of the Court except for objections based on a defect in the summons or in the service of the summons.  I understand that judgments may be entered against the above-named defendants if an answer or motion under Fed. R. Civ. P. 12 is not served within 60 days after the date the Order directing the Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

      I decline to waive service on behalf of the following defendants:

_____; _____;

_____; _____;

_____; _____;

_____
DATE

_____
SIGNATURE

_____
PRINTED/TYPED NAME

_____

_____
ADDRESS